Good morning counsel. Good morning. If it pleases the court, my name is Vicki Merolt Buchanan, and I'm representing Joseph Reyes Ramirez. I'd like to reserve two minutes. In its answering brief, the government says that Mr. Reyes Ramirez did not raise certain issues in the trial court. The problem is he did raise issues. No one was listening. In this case, Mr. Ramirez was denied effective assistance of counsel. This is not a case in which it was ineffective because the counsel was incompetent or unprepared or negligent. The grounds for Mr. Reyes's motion were articulated by him many times throughout the proceeding but were ignored. The first attorney was not allowed to be effective because of the court's insistence on going to trial. It was almost impossible for his attorney to prepare for trial. So when he convinced Mr. Ramirez to sign the plea agreement, which was not an easy task, it took him two days to do it, when he finally convinced him, he probably felt that he had done a favor for Mr. Ramirez because he got 16 years instead of 34 years. But 16 years when you're 62 years old and not in good health is pretty much a life sentence anyway. The fact that he was rushed into things was once again articulated when the second attorney was appointed after Mr. Ramirez wrote to the court and said he was unhappy with going through with the plea agreement and tried to explain to the court the ineffective assistance of counsel issue. And the second attorney he met with and he felt that that attorney was someone he could communicate with who understood his position. And the court once again said, because the attorney could not be prepared within six weeks, that Mr. Ramirez needed to get a different attorney. And Mr. Ramirez begged the court not to substitute the attorney. He said, I have all the time in the world. I'm not going anywhere. And the court denied it. And Mr. Ramirez once again articulated the grounds for his motion to withdraw the plea by saying, I'm getting messed around here. You keep pushing me through this, Your Honor. A third attorney was appointed and he didn't understand Mr. Ramirez's case. And so finally a fourth attorney came along and once again he did at least acknowledge that this was a pressured, high noon, 12th hour kind of a plea agreement, that he was under substantial duress. And that attorney also added the additional grounds that at the time of the plea hearing, unbeknownst to Mr. Ramirez who thought he was on cold medication, he was in fact on some heavy duty barbiturates for seizure condition, which could have influenced the situation at the time. At the end of the withdrawal hearing, at pages 254 to 256, Mr. Ramirez tries to articulate to the court his frustration with the entire process. There's a perception here that he's just being rushed through. The court is bound and determined to have him get to trial. He was only arraigned in March and then the court is sticking to a June 15th hearing date. Well, precisely what is your argument that there was a fair and just reason to allow him to withdraw the plea? The fair and just reason is he was denied effective assistance of counsel because he did not, there is no way his attorney could possibly have ever been prepared for a hearing on the 15th of June. Not that he didn't know what was going on during the plea hearing. We don't know that because we don't know, the judge did not want to hear from the doctor that was called. We don't know whether he understood that or not. A timeout, what do you mean the judge didn't want to hear from the doctor who was called? The doctor was present in the courtroom. Which doctor, is this Lirk or whatever? Lirk. I don't know how to pronounce it, but that's the doctor you're talking about? Yes. Well, didn't his own counsel say that that doctor really couldn't shed much light on it because it was simply an opinion from afar? Right, he had not actually. Yeah, I kind of read the record to suggest Mr. Ramirez's own lawyer sort of downplayed the impact of what that doctor might say. Well, he may have. And once again, that's, you know, he did not, he did an okay job in terms of presenting the issues before the court. The letter was there for the doctor. What did the doctor add? Pardon? What could the doctor have added? The letter, the full report was there. I've read it. Well, he could not definitively state what, how Mr. Ramirez was on the date of the hearing. There's no way that he could actually definitively know because he wasn't there. Some of the doctor's notes from the prosecution, I mean the government's witnesses, indicated that there was some confusion and things going on around the time of the, at the end of the month, around the time of the. . . Do you mean Sinovich, Siddovisky or whatever his name was? Right, that there were some problems with drugs and. . . Well, but I read that as saying two weeks before and three weeks after or vice versa. Everything seemed to be okay in terms of his cognitive functioning. Well, that, you know, that's what the judge believed as looking at it in retrospect, looking at the particular hearing at the time. But that's not the standard. The standard is this is some major information that was not available at the time. Well, that's the question I have in terms of what's available or not available. On the drug issue, are you saying your client didn't know the difference between over-the-counter cold medication and what you described as a prescription heavy-duty barbiturate or some other form of drug? There is nothing in the record that says that he did or did not. He just asked the judge. Here's what he says. He says, we have taken medication, drugs or alcohol within the last 72 hours. And he says medication for cold and sinus. The court says, okay, just over-the-counter medication? And he says yes. So my question is I'm having some trouble trying to understand what to do with the drug information that was known at the time but wasn't disclosed to the court. That's what's kind of tripping me up, if you can understand. Because if he hangs back and says, well, no, I wasn't, what's the judge to do? Well, certainly if we were talking about the plea being a voluntary and if we were talking about a post-sentencing withdrawal motion, that would clearly be the case. And I think that there would be no reason to say that this was invalid. That may, in fact, lend itself to the conclusion that he didn't know exactly what he was doing, if he thinks he's only taking over-the-counter medication. I don't have any reason to believe why would he lie about that. I mean you say it may, it also may not. True, but we're talking about fair and just reasons here. And this isn't someone who came in after the fact, after he got his pre-sentence report and decided, oh, gee, I don't want to do this particular plea. From the very beginning, he didn't want to do this thing. And he got talked into it. He got pressured into it. And as it turns out later, that was really the problem here. He needed to have the time to do his suppression motion. There's a perception here that he was being rushed through the system. What would be the standard? I was trying to figure that out because there's some sympathy here. It's kind of like a Mobius strip because but for the drugs he might not have known, but because of the drugs he could have known. You know what I'm saying? It's kind of like in this continuous loop. The doctor says there's a possibility it could have had an effect. What would be the standard we would apply in a case like this to determine whether it's a fair and just reason? Well, it was not known at the time. And apparently, I'm sure that if it was known by Mr. Iverson, who's a really good attorney, he would have brought it up at the time. It is a very liberal standard to withdraw a motion at this point in time, to withdraw the motion. When I ask you, do you want to save two minutes for rebuttal? Or a minute. Or a minute. All right. Then when I ask you a question, we'll give you the minute or two anyway. From a practical standpoint, suppose you were to prevail and your client had another trial. He's going to likely end up with a lot more than 15 years. Are you interested in here in having another trial, or are you interested in a lesser sentence? What is it that your client wants in pursuing this matter? He wants to have the suppression motion heard because he believes that the whole. So there's no chance that you could agree with the prosecution on what a resolution would be that would be satisfactory to your client? I don't know that. That certainly is a possibility, given the fact that the sentencing guidelines are different than they used to be. I don't know what. There's still that seven-year mandatory additional sentence because of the firearm. You don't know that? You don't know what your client is, if you win, what your client is walking into? Well, I do know, yes. And he's aware of that. He is aware. My question really is whether this might be an unusual criminal case that might be susceptible to mediation. Is there a possibility that you and the prosecution could agree on a resolution of this, do you think? I believe so. I mean, I believe that that would be a definite possibility. I would certainly strongly recommend that to the client, given the state of the. I have another question. I'm having a bit of a disconnect here. I just went back and looked again at the motion to withdraw and all the papers that were filed with it. And they all seem to focus on his mental state at the time. And I'm not seeing anything in here. Where is it that really this is a result of having been pushed into it by the lawyer? Well, as I said before, it's through Mr. Ramirez's own words. Because by the time he gets around to a lawyer that actually files it, it isn't that clear. He says. It's not there at all. That's the problem. I mean, I just read the notice of the motion again and the motion papers itself. And there isn't a word in there about anything that you've argued today in terms of being pushed into it. Secondly, I went back and took a look at Judge Anderson's or whoever it was. And he doesn't make any reference to this at all. So I'm having trouble finding your argument in the papers leading up to this. There are not in the papers what I'm trying to say. It wasn't at the hearing either. Well, in the hearing at page 168, he says, I'm getting rushed into this. But that's not raising a. And then he tries to raise it when he tries to speak, speak to the judge about what's going on at the hearing at page 240 to 241. The judge will not let him articulate what why he thinks that he should be able to withdraw the plea. He says, speak through your attorney. What is an appropriate thing to do? I mean, you're getting a lot of chatter now off the walls by the client. Well, I couldn't find any sound basis for the argument that you made today that the reason, the fair and just reason is he was pushed into it. It was all competency. That's why I asked that question earlier. Well, not competency. He knew what was going on. And his lawyer did mention at the hearing that it was 12th hour, high noon, that it was under some, he was under some form of duress. He did mention that at the hearing. But you're correct. It is not, none of the attorneys specified what Mr. Ramirez was trying desperately to get them to understand. To take your point, though, we would have to say that his August letter to the court where he handwrote the note saying, I can't, you know, you've got to help me, I'm having ineffective assistance of counsel, that his next counsel that filed the motion was ineffective because he didn't bring this up in his motion. Well, the next counsel was the one that the judge wouldn't let continue, even though Mr. Ramirez wanted him. But the fourth attorney was the one that didn't. The one whose motion we're now reviewing. Right. He still probably didn't understand what Mr. Ramirez was saying either. And so what he basically said was he went with the drugs situation and did not highlight the ineffective assistance, which was written by the first attorney who was let off the case. Thank you, Kayleigh. Good morning. May it please the Court. Becky Walker for the United States. With respect to the motion to withdraw the guilty plea, the district court did not abuse its discretion in denying that motion because the defendant had not established a fair and just reason to withdraw the guilty plea. Instead, what the district court was faced with was essentially a defendant who had changed his mind. The defendant had agreed to plead guilty promptly after receiving the plea pre-sentence report, which confirmed he was not a career offender. And at that point, he was faced with a pretty clear choice of if he went to trial and was convicted, he was certainly going to face a life sentence. But if he pled guilty, he had the chance of getting out of prison during his lifetime. Not much. Not too much. And this was a difficult decision. That is clear. This was a 15-year sentence on a man who was 62 years old. That's a weighty decision. And he's in bad health, isn't he? Well, he's on some medications. I don't know that we know that he's in bad health. I mean, he was taking seizure medications and asthma medications and ultimately some antidepressants at the time. But beyond that, I don't think we know that he's necessarily in poor or any sort of terminal condition. But to be sure, that is a difficult decision to make. And I think that what happened here was, as the defendant considered it more after the fact, he changed his mind and felt he wanted to take the chance on trial and pursuing his motion to suppress. And that's exactly what you see reflected in the initial motion that was filed by his counsel about two months after he pled guilty. The defendant now wanted to pursue his motion to suppress. That's all it says. That's all it says. He wanted to pursue his motion to suppress. And given the lengthy sentence that he was facing, he should be permitted to do that. And that clearly was not a fair and just reason. Under this Court's case law, change of heart is not sufficient. And that was essentially what was presented at that time. Subsequently, through new counsel, he developed the issue that he was on the seizure medication at the time, and that may have affected his judgment at that time. And he presented that as a reason for withdrawing his guilty plea. And I guess the related argument that his initial counsel was ineffective for failing to raise that. Now, we also hear, as we've argued here today and in the briefs, that it was really an issue of time pressure and that the Court put too much time pressure on the defendant by not granting a continuance. But that issue was really never developed in the district court. In fact, in the motion, even the fourth counsel, who did not have any conflict issue with raising an ineffective assistance claim, never presented to the Court any claim that the original counsel could not have been prepared for trial, was, you know, he was faced with a choice of ineffective assistance of counsel if he went to trial. There was never that claim raised. Is he barred from pursuing that on post-conviction collateral review? No, I don't believe so. That's where you think it ought to be raised. Right. That certainly would be an option he could raise. If he believed that he was faced with basically an unconstitutional choice between pleading guilty or going to trial with ineffective assistance of counsel, if he believed he could make that record, he could pursue that on collateral relief. But there's certainly no evidence in this record that counsel could not have been ready for trial on the date. And I think if you read the May 17th hearing regarding the continuance, what it really came down to, it was a scheduling issue. Counsel had a number of conflicts and was unable to find a week in which he wouldn't have to be gone for one day. First of all, he had a public defender's retreat that was going to take him out of commission for a couple of days, one week. He had a divorce proceeding in his own matter the following week. So he was concerned about not being able to finish out the trial in any given week. So he asked to push the trial off. It ended up through various conflicts that he wouldn't – he asked to put it off until August. The court was disinclined to do that. That was a two-month continuance. So they instead negotiated. And they negotiated at some length about finding a time when he could do it. Nowhere in that hearing does counsel indicate that he couldn't be prepared or couldn't provide effective assistance to the client if he started. And, in fact, at the end of the day, the court gave him the choice of proceeding on the 15th of June or the 22nd, I believe it was, of June, and in order to accommodate the conflicts. And at that point, the counsel indicated that it would be – he believed it would be in his client's interest to go ahead and proceed on the 15th, given the court's flexibility in allowing the court to go dark to accommodate his scheduling conflicts. So the time pressure issue, it was never raised as such, and it is simply not supported in the record. The duress and the high noon comments that were made at the hearing by his subsequent counsel really just reflected that the defendant was up against a deadline and that it was more in the context of explaining why he was bringing these matters to the attention now and had not brought them up at the time. And I think – but I think that's just the reality. At some point, there is always a deadline and there is always a trial date, and the record does not reflect that this defendant was under any undue time pressure. He had pledged – he had signed the plea agreement on May 27th, appeared initially in court on June 7th with a trial date of June 15th, and then the court gave him two more days to discuss it with counsel at his request, and they came back on June 9th. The court repeatedly indicated that he could take as much time as he needed to consider that – to consider the plea agreement and to talk to his counsel if he needed it. Well, that – it's – there's a little bit of passing in the night between the judge and this argument that's being made on the medication, because the judge keeps talking about what we would consider normal competency standards, and there's no doubt that he understood what was going on. Isn't the question that was really argued as to whether the medication impaired his judgment in terms of making the decision, which is a little – it's a different question from saying, did he understand? Was he competent? Right. I think that – I mean, I think the standard may – you know, could be different. Clearly, the defendant – It is different, isn't it? It is different, isn't it? It's not – it's not an invalid plea that he would need after a sentencing. That's exactly right. He would not have to meet the standard of showing that it was an invalid plea, but there's no indication that Judge Anderson believed he would. I mean, the issue was presented to him that he was taking these medications and that they had impaired his judgment, and that – so to the extent that the court was looking at his competency and his ability to understand, those were all valid things for the court to be considering under either standard. And so the court did consider those. There's no – the standard that was recited throughout the briefs and the argument in the district court was always the fair and just reason standard. There's no indication that the court misunderstood that standard in this case, unlike some of the other cases like Davis that are cited in the briefs. And so in evaluating that, the court had evidence before it and made detailed findings regarding that evidence. In particular, the letter from defense counsel – the defense counsel submitted from the doctor said only that the medications can affect cognitive abilities. There was certainly no indication in the letter, and in fact the letter made clear that he had not – the doctor had not examined this defendant and could not say that he in fact was impaired. Then the district court also had before it the declaration of Dr. Sanowski from the Metropolitan Detention Center who had examined the defendant and commented, first of all, that the drugs that he was on at that time, the phenobarbital and the Depakote, did not impair – that they might cause sedation. But there was no indication between May 28th of 2004 and July 15th, 2004, which was the period in which he pled guilty, that there was any impairment, that there were any side effects noted or that there were any adverse reactions to that medication. And he noted that those things would have been brought to his attention had there been concerns. So, in fact, the change on May 28th, too, was the only side effects from the previous medications that had been noted were muscle spasms. So that was the reason for the change on May 28th, but there was actually no indication that the phenobarbital that he was on at the time of the guilty plea was causing any adverse reaction. And the fact – I just want to respond, I guess, briefly to the fact that the defendant did not say anything at the change of plea about the drugs that he was on. And it is true that the defendant did not volunteer that information. He actually answered incorrectly when he said he was not on anything other than the cold medications. We can only speculate as to why the defendant did that. It may be bad judgment. It might have been bad judgment. It may be impaired judgment. It might be bad judgment, but, you know, we can only speculate as to that. And there was certainly no indication in the record. And the judge had before him a defendant, the whole record of the change of plea, and was there for it, was able to observe his entire demeanor. I think there are any number of explanations for why he might not have volunteered that information, one of which might have been he didn't feel it was significant. And certainly it was not raised at any point, either at that time or in the initial motion to withdraw the guilty plea. It was only raised much later in time. I think the Court was entitled to consider that fact in weighing the credibility of whether he was, in fact, impaired at that time. Certainly can weigh that against his own observations of the defendant at the time and make a conclusion, again, not going to the validity of the plea, but as to whether the defendant had, in fact, established a fair and just reason. And if the judge found, as I think he could on this record, that the defendant was not, in fact, impaired at the time of entering his guilty plea, then that did not establish a fair and just reason. Thank you, counsel. Let me ask you also, you probably aren't able to answer at the moment, but is there any possibility that you'd be interested in a mediation program to see if this could be resolved? Well, I'm not sure I can answer that right now. If you can, you can let us know. I could certainly let the Court know. We are never totally closed to resolution of cases, but obviously we did negotiate this plea and we do think it's a valid plea. Yes. On the other hand, if you were to lose, you would have another suppression motion and maybe a trial, maybe another. To be sure. So it's always a possibility. It is. It's always a possibility. Was there substance to the suppression motion? It was a challenge to the probable cause for the search warrant, and it was a State search warrant and he challenged. State search warrant. Yes. Had to do with the staleness of the evidence? Yes, in part, yes. Okay. Thank you. Thank you, Your Honor. Thank you. The case just argued will be submitted. The next case on the calendar is Bankels v. Chef America. Bankels v. Chef America.
judges: Reinhardt, Trott, McKeown